[No. 2,169.]

ALFRED WOOD, ADMINISTRATOR WITH THE WILL ANNEXED
OF THE ESTATE OF H. F. WOOD, DECEASED, v. M. ·J.
GOODFELLOW AND THE KEYSTONE QUARTZ
MINING ·COMPANY.

STATUTE OF LIMITATIONS SUSPENDED BY CONSENT OF MORTGAGOR.—
So long as a mortgagor holds the equity of redemption, and no other rights
intervene by reason of subsequent liens or incumbrances, he has the power
by written stipulation under the statute, or by absenting himself from the
State, to suspend the running of the Statute of Limitation.

MORTGAGOR CANNOT AFFECT SUBSEQUENT INCUMBRANCER.—As against
subsequent incumbrancers or a subsequent holder of the equity of redemp-
tion, the mortgagor has no power by stipulation to prolong the time of pay-
ment, or in any manner to increase the burdens of the mortgaged premises.

CASES COMMENTED ON.—Lord v. Morris, 18 Cal. 482; McCarty v. White,
21 Cal. 495; Lent v. Morrill, 25 Cal. 500; Low v. Allen, 26 Cal. 141; Lent
v. Shear, 26 Cal. 361; Barber v. Babel, 36 Cal. 11; Sichell v. Carillo, 42
Cal. 493, commented on.

STATUTE OF LIMITATIONS WHERE THIRD PERSONS BECOME INTERESTED
SUBSEQUENT TO MORTGAGE.—When third persons have acquired interests
in mortgaged property subsequent to the mortgage, they may invoke the
aid of the Statute of Limitations as against the mortgage, even though the
mortgagor, as between himself and the mortgagee, may have waived its
protection.

NO DIFFERENCE BETWEEN SUSPENSION BY WAIVER AND BY ABSENCE.
There is no difference in principle between the suspension of the running of
the Statute of Limitations resulting from an express waiver and one caused
by voluntary act in absenting oneself from the State.

RELATION BETWEEN THE MORTGAGEE AND THE SUCCESSOR OF THE
MORTGAGOR.—When the mortgagor has parted with his title to the prop-
erty and ceased to have any interest therein, those who have succeeded to
his rights stand in the same relation to the mortgagee as if they had origi-
nally made the mortgage on their own property to secure the debt of the
mortgagor.

ACTION UPON MORTGAGE BARRED AFTER FOUR YEARS.—Where a mort-
gagor transfers his interest in the mortgaged premises to a third person, the
mortgage, as contradistinguished from the mortgage debt, is to be deemed a
contract in writing in the sense of the statute on which an action must be
brought within four years from the time when the action would lie, in order
to avoid the bar of the Statute of Limitations.

CAL. REPS. XLIII—24

APPEAL from the District Court of the Tenth Judicial District, Sierra County.

The facts are stated in the opinion.

*P. Vanclief, D. H. Cowden,* and *James Galloway,* for Appellant.

*Barslow & Garber,* for Respondents.

By the Court, CROCKETT, J.:

This is an action to foreclose a mortgage made by Goodfellow in June, 1860, on his undivided interest in the Keystone mine and mill. The mortgage was duly recorded about the time it was executed. Subsequently, in October, 1860, and May, 1862, two other mortgages were made upon the whole property by Goodfellow and the other joint owners, which two last named mortgages, in October, 1862, were duly assigned to Harris & McCarthy, who immediately commenced an action to foreclose them, but failed to make Wood, the holder of the first mortgage, a party to the action. On the 3d day of November, 1862, they obtained a decree of foreclosure, under which the entire property was sold on the 6th day of December, 1862, to Harris & McCarthy, who entered into possession on the 12th day of the same month. There having been no redemption, they obtained the Sheriff's deed on the 8th day of June, 1863, and on the 30th day of March, 1864, conveyed the whole property, by absolute deed, to the defendant, the Keystone Quartz Mining Company, which has thenceforth continued in possession.

It appears from the findings, that Goodfellow left this State on the 15th of November, 1862, and has never returned to it; and that Wood, the holder of the first mortgage—for the foreclosure of which this action is brought—had actual notice on the 3d day of January, 1863, of the two subsequent mortgages and of their registration, and of the sale to Harris &

McCarthy under the decree of foreclosure, and that they were then in possession. Wood died on the 4th day of March, 1868, and this action was brought by his administrator on the 11th day of May, 1868. The chief defense relied upon by the Keystone Quartz Mining Company is the Statute of Limitations, and this defense having been sustained by the District Court, the plaintiff has appealed.

In a very able and ingenious printed argument the counsel for the plaintiff insists that the action is not barred, because, as he claims: First, the mortgage is but a collateral security for the debt, and is only an incident to it; and that if the debt, which the mortgage was made to secure, is not barred, the mortgage cannot be; second, the mortgage debt in this case is not barred, for the reason that the mortgagor, Goodfellow, left the State in November, 1862, and has never returned, and that by the express terms of section twenty-two of the Statute of Limitations "the time of his absence shall not be part of the time limited for the commencement of the action." The argument would be impregnable if it were conceded that the Keystone Quartz Mining Company, which has succeeded to and now holds the equity of redemption of the mortgagor, Goodfellow, occupied precisely his status under the statute. If Goodfellow still held the equity of redemption, and if the action was against him alone, it is evident his absence from the State would afford a sufficient answer to the plea of the Statute of Limitations. So long as he retained the equity of redemption, and no other rights had intervened, by reason of subsequent liens or incumbrances, he had the power, by written stipulation under the statute, to extend the time within which the debt should not be barred, or he might suspend the running of the statute by his absence from the State. So long as his rights only were to be affected, it was within his power to suspend the operation of the statute, either by a written stipulation or by absenting himself from the State. But this Court has

repeatedly decided that as against subsequent incumbrances, or a subsequent holder of the equity of redemption, the mortgagor has no power, by stipulation, to prolong the time of payment, or in any manner increase the burdens on the mortgaged premises. (*Lord* v. *Morris,* 18 Cal. 482; *Mc-Carty* v. *White,* 21 Cal. 495; *Lent* v. *Morrill,* 25 Cal. 500; *Low* v. *Allen,* 26 Cal. 141; *Lent* v. *Shear,* 26 Cal. 361; *Barber* v. *Babel,* 36 Cal. 11; *Sichell* v. *Carillo,* 42 Cal. 493.)

In *Belloc* v. *Davis,* 38 Cal. 242, we held that as against subsequent incumbrances the mortgagor had no power, by stipulation, to convert the debt from a currency demand into one payable in gold coin. These cases proceed on the theory that those who acquire interests in the mortgaged property, whether by conveyance or lien, subsequent to the mortgage, may stand upon their rights as they were when they acquired them; and that it is not in the power of the mortgagor, by any act of his, to change, restrict, modify, or abridge them. He has no power, by stipulation, to defer or suspend the running of the Statute of Limitations. We do not understand counsel to controvert this proposition. But his argument is, that by the very terms of the law itself, and not by reason of any stipulation on the part of Goodfellow, the statute ceased to run when he left the State, and that no additional burden has been imposed upon the property, except that which the law itself imposed; and that when third persons subsequently acquired an interest in it, they must be held to have done so subject and in subordination to the power of the mortgagor to suspend the running of the statute, by absenting himself from the State, as he had the right to do. The argument assumes that a subsequent holder of the equity of redemption, or a subsequent incumbrancer, stands in the shoes of the mortgagor, and cannot invoke the aid of the statute in the given case, because *he* could not. But it is the settled doctrine of this Court, as will be seen from the authorities above cited, that when

third persons have subsequently acquired ·interests in the mortgaged property they may invoke the aid of the statute as against the mortgage, even though the mortgagor, as between himself and the mortgagee, may have waived its protection; and we see no difference in principle between a suspension of the running of the statute resulting from an express waiver, and one caused by his voluntary act in absenting himself from the State. In either case it is the sole act of the mortgagor, performed at a time when he had lost his rightful control over the property, and when other interests had intervened, which ought not to be dependent for their protection on the conduct of the mortgagor. When the mortgagor has parted with his title to the property, and ceased to have any interest therein, those who have succeeded to his rights stand in the same relation to the mortgagee as if they had originally made the mortgage on their own property to secure the debt of the mortgagor. The mortgagor has no interest in the property, nor are they under obligation to pay his debt. Their property, however, is bound as collateral security for its payment, under the mortgage, which is a contract in writing, by which the property is pledged as a security for the debt. The mortgage, in such a case, has the same effect in law as if it had been originally made, as a separate instrument, by the parties succeeding to the rights of the mortgagor to secure his debt. If A. make a mortgage on his· own property to B., to secure a debt owing from C., the action to foreclose the mortgage must be brought within four years from the time when the debt became due. The time could not be prolonged by any stipulation between B. and C. to which A. was not privy. But when the four years were about to expire, could C., under our law, indefinitely postpone the bar of the statute, and render it nugatory as to A., by absenting himself from the State, and never returning? The argument of the plaintiff's counsel necessarily leads to this re-

sult. But we have not, heretofore, so interpreted the statute. On the contrary, we have uniformly held in analogous cases that the mortgage, as contradistinguished from the mortgage debt, in such cases is to be deemed a contract in writing in the sense of the statute, on which the action must be brought within four years from the time when the action would lie, in order to avoid the bar of the statute. If we had any doubt, on reason or authority, whether the rule is proper, it has been too long established in this State to be now disturbed.

Judgment affirmed.

Mr. Chief Justice RHODES dissented.

[The foregoing opinion was rendered at the October Term, 1870. After a rehearing, the following decision was made at the January Term, 1872.—REPORTER]:

By the Court, CROCKETT, J.:

After a careful reëxamination of the printed arguments on behalf of the appellant, we adhere to the views expressed in the opinion heretofore delivered in this cause, which will, therefore, stand as the opinion of the Court.

Judgment affirmed.

Mr. Justice RHODES did not express an opinion.